# EXHIBIT 38

Civil Action No. 12-cv-01958 (BAH)

DECLARATION OF SHAINA D. JONES

 **LEVINE SULLIVAN KOCH & SCHULZ, LLP**

1899 L Street, NW
Suite 200
Washington, DC 20036
(202) 508-1100 | Phone
(202) 861-9888 | Fax

Seth D. Berlin
202-508-1122
sberlin@lskslaw.com

October 23, 2012

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Donald Temple, Esq.
Temple Law Offices
1101 15th Street, NW
Suite 910
Washington, DC 20005

Re:   Curtis Ofori

Dear Mr. Temple:

This will respond to your letter dated October 11, 2012 to Mr. Blair Kelly of Charlottesville Publishing Group, LLC concerning a December 7, 2011 article published in *The Hook* (the "Article"). As an initial matter, please be advised that *The Hook* is published not by Charlottesville Publishing, LLC, but by Better Publications, LLC.

We have analyzed the legal claims asserted in your letter and respectfully disagree with your contention that the Article is actionably defamatory of Mr. Ofori, for several reasons. First, the Article does not, as your letter contends, "portray him as a criminal rapist and perpetrator of sexual assault." Rather, the Article describes a controversy both generally about how allegations of rape are handled on college campuses and specifically about Kathryn Russell's allegations against Mr. Ofori. While the Article accurately reports Ms. Russell's and her mother's allegations against your client, and their contention that officials mishandled Ms. Russell's case, the Article also accurately reports that (a) "[p]rosecutors said there wasn't enough evidence to take the case"; (b) "UVA's Sexual Assault Board agreed, issuing a not guilty verdict after hearing" from Ms. Russell and Mr. Ofori; (c) there is no "conviction against him"; (d) Assistant Commonwealth's Attorney Rick Moore "explained there wasn't enough evidence for local prosecutors to take the case"; (e) like another UVA student, Ms. Russell "was told by prosecutors that her case was unwinnable"; (f) Ms. Russell sued Mr. Ofori in 2006, but then dropped the case; and (g) a second sexual assault complaint was filed against Mr. Ofori and the finding against him was overturned on appeal.

The inclusion of these and other facts makes clear that, when the Article is viewed as a whole, as it must, *The Hook* was not intending to endorse the defamatory meaning ascribed to the

 LEVINE SULLIVAN
KOCH & SCHULZ, LLP

Donald Temple, Esq.
October 23, 2012
Page 2

Article by your client. *See, e.g., White v. Fraternal Order of Police*, 909 F.2d 512, 519 (D.C. Cir. 1990) (test is whether statements were "reasonably understood . . . *to have been intended* in the defamatory sense") (citation omitted; emphasis added). Thus, for example, a report "of the true fact of a 14-year-old's rape allegation was not capable of bearing the defamatory meaning that [the plaintiff] was actually guilty of the alleged rape" even though:

> the report omitted the facts that (1) [he] had passed a lie detector test; (2) the alleged victim had been declared 'untestable' because of her emotional display during her polygraph examination; (3) a medical exam showed no signs of rape; and (4) numerous federal authorities had called the rape allegations unfounded.

*Id.* at 520 (discussing with approval *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648-49 (8th Cir. 1985), *reheard on other grounds*, 788 F.2d 1300 (8th Cir. 1986) (en banc)). For the same reasons, the Article here is not capable of bearing the defamatory meaning ascribed to it by Mr. Ofori.

      Second, the Article constitutes a privileged report of official proceedings and records, including those of the Charlottesville Police Department, the University of Virginia, the Commonwealth's Attorney's Office, as well as Ms. Russell's civil lawsuit against your client. *See, e.g., Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985). This privilege protects not only reports of governmental proceedings themselves, but also news reports recounting the allegations that "prompted" the governmental action or proceeding "in the first place." *White v. Fraternal Order of Police*, 707 F. Supp. 579, 597 (D.D.C. 1989), *aff'd*, 909 F.2d 512 (D.C. Cir. 1990) (privilege protects report of police union's letters that led to committee investigation of police captain's alleged drug use because "reports were fair summaries of the contents of the letters" and "summarized the gist of the [letters'] allegations" such that defendant "met all of the requirements for invoking" privilege). Indeed, the bulk of the individual statements enumerated in your letter on their face expressly report on Ms. Russell's lawsuit against Mr. Ofori or other official proceedings such that they are privileged as a matter of law.

      Finally, as discussed above, we disagree with Mr. Ofori's assertion that the Article conveys the defamatory meaning that he sexually assaulted Ms. Russell and/or that she was unable to establish his guilt because her case was handled improperly. However, to the extent that the Article were deemed to communicate such a conclusion, that would constitute a constitutionally protected expression of opinion based on true and otherwise privileged facts disclosed in the Article. Where "an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First



LEVINE SULLIVAN
KOCH & SCHULZ, LLP

Donald Temple, Esq.
October 23, 2012
Page 3

Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995). For the same reason, assuming *arguendo* that the Article were construed as your client alleges, such conclusions are protected by the common law "fair comment" privilege. *See, e.g., Lane v. Random House, Inc.*, 985 F. Supp. 141, 150 (D.D.C. 1995) ("Fair comments are not actionable in defamation '[b]ecause the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts.'") (quoting *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994)).

      For each of the above reasons, and others, the Article is not actionable. Accordingly, *The Hook* declines Mr. Ofori's demand for a formal retraction or a monetary payment. However, to the extent that your letter suggests that there are additional facts that were not included in the Article that would shed further light on this controversy, *The Hook* would be pleased to consider including either a statement from your client and/or additional information (upon receiving and evaluating additional documentation supporting your client's factual assertions) in an updated version of the Article on its website. Alternatively, *The Hook* would be pleased (subject to its normal guidelines for publishing letters to the editor and the like) to publish a statement, prepared by you or your client, stating his position with respect to the controversy and/or his concerns with, or objections to, the Article. We believe that your clients concerns are best addressed along these lines. If you would like to pursue either of these options, please let me know.

      Should you have any questions or would like to discuss the foregoing, please do not hesitate to contact me.

Very truly yours,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: _____
Seth D. Berlin